JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

KIMBERLY EPLEY

**DEFENDANTS**

COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC & COMCAST CORPORATION

**(b)** County of Residence of First Listed Plaintiff   Beaufort
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   Philadelphia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Oeltjen, Esquire
Console Mattiacci Law LLC, 1525 Locust Street, 9th
Floor, Philadelphia, PA 19102

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government
Plaintiff

☒ 3   Federal Question
*(U.S. Government Not a Party)*

☐ 2   U.S. Government
Defendant

☐ 4   Diversity
*(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury  - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
Another District
*(specify)*

☐ 6 Multidistrict
Litigation -
Transfer

☐ 8 Multidistrict
Litigation -
Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42. U.S.C. §2000e, et. seq. ("Title VII"), 42 U.S.C. §12101, et seq ("ADA"); 2601, et. seq. ("FMLA"); 43 P.S. §951, et seq. ("PHRA"); Phila. Code §9-1101, et. seq. ("PFPO")
Brief description of cause:
Plaintiff brings this action against her former employer for discriminatory and retaliatory conduct.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION**
UNDER RULE 23, F.R.Cv.P.

DEMAND $
excess of $75,000

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____   DOCKET NUMBER _____

DATE
January 12, 2021

SIGNATURE OF ATTORNEY OF RECORD
*Katherine C. Oeltjen*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ Bluffton, SC 29910 _____

Address of Defendant: _____ 1701 JFK Boulevard, Philadelphia, PA 19103 _____

Place of Accident, Incident or Transaction: _____

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 1/12/2021 _____   /s/ Katherine C. Oeltjen _____   318037 _____

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.** *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
*(Please specify):* _____

**B.** *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
*(Please specify):* _____

---

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, Katherine C. Oeltjen, Esquire, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 1/12/20201 _____   /s/ Katherine C. Oeltjen _____   318037 _____

*Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| KIMBERLY EPLEY | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC,  et al. | : | |
| Defendants. | : | NO. |
| DEFENDANT | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants.  (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.                ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.                ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.        (X)

| | | |
|---|---|---|
| January 12, 2021 | / /s/ Katherine C. Oeltjen | Katherine C. Oeltjen |
| **Date** | **Attorney-at-law** | **Attorney for**  Plaintiff |
| 215-545-7676 | 215-565-2852 | oeltjen@consolelaw.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| KIMBERLY EPLEY,<br>Bluffton, South Carolina 29910<br><br>        Plaintiff,<br>  v.<br><br>COMCAST CABLE COMMUNICATIONS<br>MANAGEMENT, LLC,<br>One Comcast Center<br>1701 JFK Boulevard<br>Philadelphia, PA 19103<br><br>and<br><br>COMCAST CORPORATION<br>One Comcast Center<br>1701 JFK Boulevard<br>Philadelphia, PA 19103<br><br>        Defendants. | CIVIL ACTION NO.:<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I.   INTRODUCTION

Plaintiff, Kimberly Epley ("Plaintiff"), a high-performing and experienced sales professional within the cable industry, brings claims against her former employers, Comcast Cable Communications management, LLC and Comcast Corporation (collectively "Defendants") for discriminatory and retaliatory conduct, including in connection with her termination and Defendant's subsequent failure to hire her for positions for which she was qualified. Plaintiff brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42. U.S.C. §2000e, *et. seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. §12101, et seq., the Family Medical Leave Act, 29 U.S.C. §2601, *et seq.* ("FMLA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §951, *et seq.* ("PHRA") and the

1

Philadelphia Fair Practices Ordinance, Phila. Code §9-1101, *et seq.* ("PFPO") and seeks all appropriate relief.

## II.   PARTIES

1.      Plaintiff is an individual and citizen of South Carolina. She resides in Bluffton, South Carolina, 29910.

2.      Plaintiff is female.

3.      Defendant Comcast Cable Communications Management LLC ("Defendant Cable") is organized under the laws of the Commonwealth of Pennsylvania and maintains a principal place of business at One Comcast Center, Philadelphia, Pennsylvania.

4.      Defendant Comcast Corporation ("Defendant Comcast") is a Pennsylvania corporation. Defendant Cable is a wholly owned subsidiary of Defendant Comcast.

5.      Defendants maintain their principal place of business at One Comcast Center, 1701 JFK Boulevard, Philadelphia, Pennsylvania.

6.      Defendants are engaged in an industry affecting interstate commerce and regularly do business in the Commonwealth of Pennsylvania, including without limitation, within and throughout the City of Philadelphia.

7.      At all times material hereto, Plaintiff worked for Defendants out of their offices at One Comcast Center, 1701 JFK Boulevard, Philadelphia, Pennsylvania. Plaintiff also traveled on Defendants' behalf.

8.      At all times material hereto, Defendants employed more than fifteen (15) employees.

9.    At all times material hereto, Defendants acted by and through their authorized agents, servants, workmen, and/or employees acting within the course and scope of their employment with Defendants and in furtherance of Defendants' business.

10.    At all times material hereto, Defendants acted as employers within the meaning of the statutes which form the basis of this matter.

11.    At all times material hereto, Plaintiff was an employee of Defendants within the meaning of the statutes that form the basis of this matter.

## III.    JURISDICTION AND VENUE

12.    The causes of action which form the basis of this matter arise under Title VII, the ADA, the FMLA, the PHRA, and the PFPO.

13.    The District Court has jurisdiction over Count I (Title VII), Count II (ADA) and Count III (FMLA) pursuant to 28 U.S.C. §1331.

14.    The District Court has jurisdiction over all Counts pursuant to 28 U.S.C. §1332 since the amount in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interests and costs, and as there is complete diversity of citizenship as Plaintiff is a citizen of South Carolina and Defendants are not citizens of South Carolina.

15.    Venue is proper in this District Court under 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(f).

16.    On or about April 5, 2019, Plaintiff filed a Complaint with the Pennsylvania Human Relations Commission ("PHRC") complaining of the acts of discrimination and retaliation alleged herein. The Complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC").   Attached hereto, incorporated herein, and marked as

Exhibit "1" is a true and correct copy of the PHRC Complaint (with personal identifying information redacted).

17.     On or about July 18, 2019, Plaintiff filed a Second/Amended Complaint with the PHRC complaining of the acts of discrimination and retaliation alleged here. The Complaint was cross-filed with the EEOC. Attached hereto, incorporated here, and marked as Exhibit "2" is a true and correct copy of the Second/Amended PHRC Complaint (with personal identifying information redacted).

18.     On or about October 15, 2020, the EEOC issued the Plaintiff a Notice of Right to Sue for her Complaint and Second/Amended Complaint.  Attached hereto and marked as Exhibit "3" is a true and correct copy of the Notice (with personal identifying information redacted).

19.     Plaintiff has fully complied with all administrative prerequisites for the commencement of this action.

## IV.     FACTUAL ALLEGATIONS

20.     Plaintiff was hired by Defendants on or about December 21, 2015 as Vice President, Strategic Client Groups, Enterprise Business ("VP"). As VP, Plaintiff was responsible for creating and managing a sales channel/organization that would target a new business segment for Defendants, Fortune 100 and Large Distributed Enterprises.

21.     At all times material hereto, Plaintiff was a high-performing, successful employee of Defendants, routinely meeting or exceeding objective targets, including sales quotas and objectives.

22.      Beginning on or about February 4, 2016, Plaintiff reported to Glenn Katz ("Katz") (male). Katz, in turn, reported to William Stemper ("Stemper") (male), President.

Stemper reported to Dave Watson ("Watson") (male), President and Chief Executive Officer, Defendant Cable.

23.     Plaintiff was the only female VP reporting to Katz.

24.     Two male VPs also reported to Katz: Amit Verma ("Verma") (male), Vice President, Solution Architecture Engineering and Technology; and, Purazar Gowadia ("Gowadia") (male), Vice President, National Client Group, Enterprise Business.

25.     Plaintiff was qualified to perform Gowadia's position.

26.     Plaintiff was the only female VP, out of twelve (12) total VP employees, running a Headquarters ("HQ") based, sales channel organization reporting directly or indirectly to Stemper.

27.     Katz demonstrated bias against Plaintiff as a female employee during the time she reported to him, including without limitation, in connection with the following:

    a.  Katz, who had previously supported male employees for leadership development programs, did not support Plaintiff's application or request to be nominated for the Betsey Magness Leadership Institute, a premier development program for women in leadership in the cable industry. Katz told Plaintiff he had discussed her request for nomination with Andrew Topping ("Topping") (male), Senior Vice President, Human Resources and others and that he would support her, but never actually did so.

    b.  Katz treated Plaintiff differently than male employees, speaking over her, interrupting her, ignoring her and routinely trying to take credit for her work in order to make her look "worse" and him look "better."

28.     In or about early May, 2018, Plaintiff told Katz that she required an FMLA medical leave of absence to undergo surgery for a female related disability/medical condition.

29.     Shortly thereafter, Plaintiff was out of work to undergo a biopsy.

30.     Following the results of her biopsy, in or about late June, 2018, Plaintiff reminded Katz that she was slated to have female-related surgical procedures and would be out of work on an FMLA medical leave of absence as a result.

31.     Between July 2, 2018 and July 23, 2018, Plaintiff took an FMLA medical leave following surgery to remove her uterus and ovaries.

32.     Plaintiff was initially scheduled to be out of work for a shorter period of time, but unexpected complications necessitated a longer recovery period.

33.     At all times material hereto, Plaintiff kept Katz informed of her needs related to medical leave. Katz understood the nature of her surgery and disability.

34.     When Plaintiff returned to work, on or about July 23, 2018 she required accommodations for her disability and provided Defendants with a physician letter regarding same.

35.     Defendants granted the following accommodation requests for the first three (3) weeks following her return: limited travel; no carrying luggage; and the ability to work from home as needed.

36.     Defendants understood that Plaintiff was disabled and regarded her as having a disability.

37.     Katz did not conduct a mid-year performance review with Plaintiff upon her return for treatment of her disability/ FMLA leave despite it being the time of year when

Defendants' managers within Plaintiff's group routinely conducted mid-year performance evaluations.

38.     Katz did not provide any explanation for failing to evaluate Plaintiff's performance.

39.     Defendants treated Plaintiff differently and worse, than they treated male and/or non-disabled employees and/or employees who had not sought accommodations or required a medical leave of absence. By way of example only, in addition to continuing to interrupt her, ignore her, speak over her and trying to take credit for her work, Katz and Defendants excluded her from trainings, leadership opportunities, meetings, dinners and events. Non-disabled, male employees who had not sought reasonable accommodations or who had not required medical leave were routinely included in trainings, leadership opportunities, meetings, dinners and events and many benefitted from the career advancement and related accolades related to their attendance at such functions.

40.     Despite Plaintiff's excellent performance and closure of high-value deals for Defendants, her successes were met with little fanfare by Defendants while lesser performance from her male, non-disabled comparators was lauded in a public and often effusive manner.

41.     Plaintiff was, at all material times, the only disabled employee reporting to Katz who required FMLA leave and/or who made requests for reasonable accommodations because of a disability.

42.     On or about December 11, 2018, in a meeting with Katz, Defendants disproportionately increased Plaintiff's quota for 2019. Katz did not increase the quota for the male VP who had a quota and reported to Katz.

43.     On or about December 17, 2018, in a meeting with Katz, Plaintiff was told that Defendants would be giving her a lower performance rating than she had received historically and lower than her actual performance warranted.

44.     In the meeting, Katz minimized Plaintiff's contributions to Defendants. Katz criticized Plaintiff for "missing" certain work while she was out on FMLA leave.

45.     Katz falsely stated that Plaintiff failed to meet her 2018 target numbers.

46.     On February 28, 2019, in a meeting with Katz and Topping, Defendants terminated Plaintiff's employment, effective March 15, 2019. The stated reasons for her termination were that Plaintiff was not in "alignment" with Defendants and she did not have the "skill set" that Defendants were looking for. Defendants further stated that they wanted Plaintiff's replacement to be "more aggressive." Defendants told Plaintiff that they had been discussing since mid-year "this relationship."  Plaintiff understood "this relationship" to refer to her employment relationship with Defendants.

47.     During the same meeting, Defendants told Plaintiff to apply internally for other positions up to the effective date of her termination.

48.     At no time prior to February 28, 2019, was Plaintiff placed on any performance management plan or otherwise told that her job was, in any way, in jeopardy or that her performance was materially deficient.

49.     Defendants failed to follow their own policies in terminating Plaintiff without warning.

50.     Plaintiff met or exceeded her target numbers for 2016, 2017 and 2018. Conversely, Gowadia missed his 2018 targets and remained employed.

51.     Defendants have a history of pushing out and/or terminating high-level female employees.

52.     Defendants have an underrepresentation of women in VP or above level positions within Comcast Business/Stemper's organization.

53.     The reason(s) given by Defendants for Plaintiff's termination are false and pre-textual.

54.     Before her termination became effective, on or about March 12, 2019, Plaintiff applied internally for an open position, Vice President, Product Management.

55.     Plaintiff was qualified for the position.

56.     Plaintiff was not interviewed or hired for the position.

57.     Defendants did not provide any reason for not hiring Plaintiff for the position.

58.     Plaintiff asked Topping for an extension in the effective date of her termination date so that she could continue to look for another job internally. Topping denied the request.

59.     Plaintiff filed a PHRC Complaint against Defendants on or about April 5, 2019.

60.     A copy of the PHRC Complaint was sent to Defendants on or about that same day.

61.     On or about April 20, 2019, Plaintiff applied for a posted position, Vice President, Enterprise Solutions Sales at Defendants.

62.     Plaintiff was qualified for the position.

63.     On or about April 22, 2019, Plaintiff emailed Katz, Stemper, and Topping to advise them she had applied for the Enterprise Solutions Sales position, that she was qualified for the position, and that she wanted to be considered.

64.     Plaintiff did not receive any response to her email.

9

65.     Plaintiff applied for additional positions with Defendants for which she was qualified, including without limitation:

      a.   General Manager: Arthur W. Perdue Stadium (applied on or about April 26, 2019);

      b.   Vice President, Customer Experience Strategy and Operations (applied on or about May 2, 2019);

      c.   Senior Director, Partnerships, Community Impact (Applied on or about May 3, 2019); and

      d.   Vice President Sales and Operations (Applied on or about May 3, 2019).

66.     Defendants did not interview Plaintiff for any of the above positions.

67.     Defendants did not hire Plaintiff for any of the above positions.

68.     For each position, Defendants either failed to provide any reason for not interviewing or hiring Plaintiff (General Manager Arthur W. Perdue Stadium and Vice President Customer Experience Strategy and Operations) or stated that "based on the needs for this particular role…" the Defendants had decided to proceed with candidates "whose qualifications and background are a better fit."

69.     Defendants stated reason(s) for refusing to hire Plaintiff for the positions identified above are false and pre-textual.

70.     Following her termination, Plaintiff's VP job was performed by male and/or non-disabled and/or non-complaining employees.

71.     Plaintiff's sex was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff, including without limitation, in connection with her termination and Defendants' failure to hire her.

72.     Plaintiff's complaining of sex discrimination was a motivating and/or determinative factor in Defendants' discriminatory and retaliatory treatment of Plaintiff, including without limitation in connection with Defendants' failure to hire her.

73.     Plaintiff's disability, including her record of disability and Defendants' regarding her as having a disability, and Plaintiff's need for reasonable accommodations, was a motivating and/or determinative factor in connection with Defendants' discriminatory and retaliatory treatment of Plaintiff, including, without limitation, in connection with terminating Plaintiff and failing to hire her.

74.     Plaintiff's requests for leave, reasonable accommodations, and her complaint(s) of disability discrimination were a motivating and/or determinative factor(s) in Defendants' discriminatory and retaliatory treatment of Plaintiff including in connection with her termination and Defendants' failure to hire her.

75.     At all times material hereto, Plaintiff was able to perform the essential functions of her job with or without a reasonable accommodation.

76.     The Defendants failed to prevent or address the discriminatory and retaliatory conduct referred to herein and further failed to take corrective and remedial measures to make the workplace free of discriminatory and retaliatory conduct.

77.     The retaliatory actions taken against Plaintiff after she complained of discriminatory conduct would have discouraged a reasonable employee from complaining about discrimination.

78.     Defendants retaliated against Plaintiff for taking FMLA leave and interfered with her rights to FMLA leave as necessitated by her disability.

79.     As a direct and proximate result of the discriminatory and retaliatory conduct of Defendants, Plaintiff has in the past incurred and may in the future incur a loss of earnings and/or earning capacity, loss of benefits, pain and suffering, embarrassment, humiliation, loss of self-esteem, mental anguish, and loss of life's pleasures.

80.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

81.     Defendants acted with malice and/or reckless indifference to Plaintiff's protected rights.

82.     The conduct of Defendant, as set forth above, was outrageous and warrants the imposition of punitive damages against Defendants.

## COUNT I – TITLE VII

83.     Plaintiff incorporates by reference paragraphs 1 through 82 above, as if set forth herein in their entirety.

84.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated Title VII.

85.     Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

86.     As a direct and proximate result of Defendants' violation of Title VII, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

87.     Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT II – ADA

88.     Plaintiff incorporates herein by reference paragraphs 1 to 87 above, as if set forth herein in their entirety.

89.     By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the ADA.

90.     Defendants acted intentionally, and with malice and/or reckless indifference to Plaintiff's rights, and their conduct warrants the imposition of punitive damages.

91.     As a direct and proximate result of Defendants' violation of the ADA, Plaintiff has suffered the injuries, damages, and losses set forth herein.

92.      Plaintiff is entitled to all costs and attorneys' fees incurred as a result of the unlawful behavior complained of herein.

## COUNT III—FMLA

93.     Plaintiff incorporates by reference paragraphs 1 through 92 above, as if set forth herein in their entirety.

94.     By committing the foregoing acts against Plaintiff, Defendants have violated the FMLA.

95.     Defendants' conduct was retaliatory and/or interfered with her rights to additional/future leave.

96.     Said violations were not in good faith, and Defendants did not have reasonable grounds to believe that the foregoing acts were not in violation of the FMLA.

97.     The imposition of liquidated damages is warranted.

98.     As a direct and proximate result of Defendants' violations of the FMLA, Plaintiff has suffered damages and losses set forth herein and has incurred attorneys' fees and costs.

## COUNT IV – PHRA

99.    Plaintiff incorporates by reference paragraphs 1 through 98 above, as if set forth herein in their entirety.

100.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PHRA.

101.   Said violations were intentional and willful.

102.   As a direct and proximate result of Defendants' violation of the PHRA, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

103.   Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

## COUNT V – PFPO

104.   Plaintiff incorporates by reference paragraphs 1 through 103 above, as if set forth herein in their entirety.

105.   By committing the foregoing acts of discrimination and retaliation against Plaintiff, Defendants have violated the PFPO.

106.   Said violations were done with malice and/or reckless indifference to Plaintiff's protected rights and warrant the imposition of punitive damages.

107.   As a direct and proximate result of Defendants' violation of the PFPO, Plaintiff has suffered the damages and losses set forth herein and has incurred attorneys' fees and costs.

108.   Plaintiff suffered and may continue to suffer irreparable injury and monetary damages as a result of Defendants' discriminatory and retaliatory acts unless and until this Court grants the relief requested herein.

109.   No previous application has been made for the relief requested herein.

## **RELIEF**

WHEREFORE, Plaintiff seeks damages and legal and equitable relief in connection with Defendants' improper conduct, and specifically prays that the Court grant the following relief to Plaintiff by:

a.      Declaring the acts and practices complained of herein to be in violation of Title VII;

b.      Declaring the acts and practices complained of herein to be in violation of the ADA;

c.      Declaring the acts and practices complained of herein to be in violation of the FMLA;

d.      Declaring the acts and practices complained of herein to be in violation of the PHRA;

e.      Declaring the acts and practices complained of herein to be in violation of the PFPO;

f.      Enjoining and permanently restraining the violations alleged herein;

g.      Entering judgment against the Defendants and in favor of the Plaintiff in an amount to be determined;

h.      Awarding compensatory damages to make the Plaintiff whole for all lost earnings, earning capacity, and benefits, which Plaintiff has suffered as a result of Defendants' improper conduct;

i.       Awarding compensatory damages to Plaintiff for past pain and suffering, emotional upset, mental anguish, humiliation, and loss of life's pleasures, which Plaintiff has suffered as a result of Defendants' improper conduct;

j.       Awarding punitive damages to Plaintiff;

k.       Awarding liquidated damages to Plaintiff;

l.       Awarding Plaintiff other such damages as are appropriate under Title VII, the ADA, the FMLA, the PHRA, and the PFPO;

m.       Awarding Plaintiff the costs of suit, expert fees and other disbursements, and reasonable attorneys' fees; and

n.       Granting such other and further relief as this Court may deem just, proper, or equitable including other equitable and injunctive relief providing restitution for past violations and preventing future violations.

**CONSOLE MATTIACI LAW LLC**

Dated: January 12, 2021              By:      */s/ Katherine C. Oeltjen*
                                             Stephen G. Console, Esquire (36656)
                                             Katherine C. Oeltjen, Esquire (318037)
                                             1525 Locust Street, 9th Floor
                                             Philadelphia, PA 19102
                                             (215) 545-7676
                                             (215) 565-2852 (fax)
                                             *Attorneys for Plaintiff Kimberly Epley*

# EXHIBIT 1

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## COMPLAINT

| | |
|---|---|
| COMPLAINANT: | : |
| **KIMBERLY EPLEY** | :   Docket No. |
| v. | : |
| RESPONDENTS: | : |
| **COMCAST CORPORATION** | : |
| and | : |
| **COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC** | : |

1. The Complainant herein is:

    Name:      Kimberly Epley

    Address:   REDACTED

2. The Respondents herein are:

    Names:     Comcast Corporation and Comcast Cable Communications Management, LLC

    Address:   1701 JFK Boulevard
               Philadelphia, PA 19103

3. I, Kimberly Epley, the Complainant herein, allege that I was subjected to unlawful discrimination because of my sex (female) and my disability (including history of and regarded as), and retaliation because I sought reasonable accommodations for my disability, as set forth below.

**Discrimination and Retaliation**

**A. I specifically allege:**

[1]  I began working at Respondents on or about December 21, 2015.

[2]  I consistently performed my job duties in a highly competent manner, received positive performance reviews, and achieved my sales and revenue targets.

[3]  I held the position of Vice President, Strategic Client Groups, Enterprise Business.

[4]  I reported to Glenn Katz (male), Senior Vice President and General Manager of Enterprise Services.  Katz (male) reported to William Stemper (male), President. Stemper (male) reported to David Watson (male), President and Chief Executive Officer, Comcast Cable.

[5]  In or about February 4, 2016, I began reporting to Katz (male).

[6]  I was the only female Vice President employee reporting to Katz (male).

[7]  I was the only female Vice President employee, out of twelve (12) total Vice President employees, running an HQ sales channel organization reporting indirectly or directly to Stemper (male).

[8]  I was the only disabled[1] Vice President employee reporting to Katz (male).

[9]  I was the only disabled Vice President employee, out of twelve (12) total Vice President employees, running a sales channel organization reporting indirectly or directly to Stemper (male).

[10]  At the time of my termination, the following Vice President employees reported Katz (male), in addition to me: Amit Verma (male), Vice President, Solution

---

[1] References herein to an employee not having a disability are to the best of my knowledge.

Architecture Engineering and Technology; and Purazar Gowadia (male), Vice President, National Client Group, Enterprise Business. I was qualified to perform Gowadia's position.

[11]     In or about May 2018, I requested Katz's support in my application and in nominating me for a women's leadership program, as was required for participation in the program. The program was entitled the Betsy Magness Leadership Institute, and was the premier development program for women leadership in the cable industry.

[12]     Katz (male) had previously supported male employees for leadership development programs. I was not aware of Katz (male) supporting any female Vice President employees for leadership development programs.

[13]     Katz (male) told me that he discussed my request for nomination to the women's leadership program with Andrew Topping (male), Senior Vice President, Human Resources, and Amy Masci (female), Executive Director, Human Resources.

[14]     In or about early May 2018, I informed Katz (male) that I needed to undergo female-related surgical procedures, and would be out of work on an FMLA medical leave of absence for the same.

[15]     On May 17, 2018, I was out of work in the morning to undergo a biopsy hysterectomy.

[16]     In or about late June 2018, I reminded Katz (male) that I needed to undergo female-related surgical procedures, and would be out of work on an FMLA medical leave of absence for the same.

[17]     From July 2, 2018 to July 23, 2018, I was out of work on an FMLA leave of absence for surgery to remove my uterus and ovaries and subsequent recovery.

[18]     I was initially scheduled to be out of work for approximately two (2) weeks; however, due to unexpected complications, the recovery was slower than expected and I was on an FMLA leave of absence for three (3) weeks instead of two (2) weeks.

[19]     On or about July 23, 2018, I returned to work from my FMLA leave of absence.

[20]     I requested accommodations for my disability upon my return to work, and provided a letter from my doctor.  I requested and was granted the following accommodations: limited travel for the first three (3) weeks; no carrying luggage for the first three (3) weeks; and the ability to work from home, as needed, for the first three (3) weeks.

[21]     Upon my return from my FMLA leave of absence for my disability, Katz (male) did not conduct a mid-year performance review with me.

[22]     Respondents treated me differently and worse, and in a more hostile and dismissive manner, than they treated male and/or nondisabled employees and/or employees who did not seek accommodations and/or employees who did not take a medical leave of absence.

[23]     Katz (male) spoke over me, interrupted me, ignored me, and sought to get credit for my work, different from how he interacted with male and/or nondisabled employees.

[24]     Respondents excluded me from training and leadership opportunities, meetings, dinners, and events in which nondisabled and/or male employees and/or employees who did not seek accommodations and/or who did not take a medical leave of absence were included.

[25]     On December 11, 2018, in a meeting with Katz (male), Respondents disproportionately increased my quota for 2019 and did not increase the 2019 quotas for the male Vice President employees reporting to Katz (male).

[26]     On or about December 17, 2018, in a meeting with Katz (male), I was told that Respondents would be giving me a performance rating lower than my positive performance warranted. Katz (male) minimized my contributions to Respondents and criticized me for certain work that I missed while I was out on an FMLA leave of absence for my disability. I was told that I would not receive a highly effective rating for 2018 because I did not meet my target numbers. This was false. I exceeded my target numbers for 2018 and closed two (2) significant deals for Respondents in 2018.

[27]     Respondents unjustly criticized me and gave me a performance rating lower than my positive performance warranted because of my sex and/or my disability and/or my seeking reasonable accommodations, including a medical leave of absence, for my disability.

[28]     On February 28, 2019, in a meeting with Katz (male) and Topping (male), Respondents terminated my employment, effective March 15, 2019. The stated reasons were that I was not in alignment with Respondents and I did not have the skill set that Respondents were looking for. I was told that Respondents had been discussing since mid-year that "this relationship," which I understood to be my employment with Respondents, "wasn't working" for Respondents. I was told that Respondents wanted my replacement to be "more aggressive." I understood these comments to be evidence of a sex and/or disability bias.

[29]     Respondents' stated reasons for terminating my employment are pretext and/or statements made because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or taking a medical leave of absence.

[30]     Respondents terminated my employment because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or taking a medical leave of absence.

[31]     I had no opportunity to remedy any allegedly deficient performance or procedures before Respondents terminated my employment.

[32]     I was provided with no opportunity to remain employed with Respondents.

[33]     Respondents failed to use any progressive discipline process before terminating my employment.

[34]     Respondents failed to follow its own processes and procedures in terminating my employment.

[35]     Respondents retained all nondisabled, male employees reporting to Katz when I was terminated.

[36]     I had more service time at Respondents as a Vice President than the nondisabled, male Vice Presidents reporting to Katz (male)—all of whom were retained when I was terminated.

[37]     I had consistently exceeded my target numbers for 2016, 2017, and 2018. Gowadia (male) did not meet his target numbers for 2018 and was retained when I was terminated.

[38]     Respondents have assigned my job duties to nondisabled, male employees. I was more qualified to perform my job duties than the nondisabled, male employees to whom Respondents have assigned my job duties.

[39]     Respondents subjected me to a hostile work environment because of my sex and/or disability and/or seeking accommodations and/or taking a medical leave of absence.

[40]     Respondents' sex and disability discriminatory and retaliatory conduct toward me has caused me emotional distress.

[41]     Respondents' comments and conduct evidence a bias against female and/or disabled employees.

[42]     Respondents have an underrepresentation of female employees, particularly in high level positions.

[43]     Respondents have pushed out and/or terminated and/or treated in a hostile and dismissive manner high-level female employees.

[44]     **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are female, and have been discriminated against based on sex, in connection with termination, failure to be promoted, compensation, and being subjected to a hostile work environment.**

**B.** Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and my disability (including history of and regarded as), and retaliated against me for seeking reasonable accommodations for my disability in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

4.     The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices in violation of:

   **X**     **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L. 744, as amended) Section 5 Subsection(s):   (a); (d)**

_____     Section 5.1 Subsection(s) _____

_____     Section 5.2 Subsection(s) _____

_____   Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961, P.L. 766, as amended) Section 4 Subsection(s) _____

5.     Other action based upon the aforesaid allegations has been instituted by the Complainant in any court or before any other commission within the Commonwealth of Pennsylvania as follows:

**    X     This charge will be referred to the EEOC for the purpose of dual filing.**

6.     The Complainant seeks that Respondents be required to:

(a) Make the Complainant whole.

(b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

(c) Remedy the discriminatory and retaliatory effect of past practice(s) and procedure(s).

(d) Take further affirmative action necessary and appropriate to remedy the violation complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

4/5/2019
_____
(Date Signed)

_____
(Signature)    Kimberly Epley

**REDACTED**

# EXHIBIT 2

COMMONWEALTH OF PENNSYLVANIA
GOVERNOR'S OFFICE
PENNSYLVANIA HUMAN RELATIONS COMMISSION

## SECOND COMPLAINT

COMPLAINANT:                                    :
                                                :
**KIMBERLY EPLEY**                              :          Docket No.
                                                :
v.                                              :
                                                :
RESPONDENTS:                                    :
                                                :
**COMCAST CORPORATION**                         :
                                                :
and                                             :
                                                :
**COMCAST CABLE COMMUNICATIONS**                :
**MANAGEMENT, LLC**                             :

1.  The Complainant herein is:

    Name:        Kimberly Epley

    Address:     REDACTED

2.  The Respondents herein are:

    Names:       Comcast Corporation and Comcast Cable Communications Management,
                 LLC

    Address:     1701 JFK Boulevard
                 Philadelphia, PA 19103

3.  I, Kimberly Epley, the Complainant herein, allege that I was subjected to unlawful

discrimination because of my sex (female) and my disability (including history of and regarded

as), and retaliation because I sought reasonable accommodations for my disability and

complained of sex and disability discrimination, as set forth below.

**Discrimination and Retaliation**

A.  **I specifically allege, in addition to that set forth in my first Complaint, including, but not limited to, the following, all of which has occurred since filing my first Complaint:**

[1]      On April 5, 2019 I filed my first Complaint with the PHRC against Respondents.

[2]      On April 20, 2019, I applied for the posted Vice President, Enterprise Solutions Sales position at Respondents.  I was qualified for the position.

[3]      On April 22, 2019, in an email to Glenn Katz (male), Senior Vice President and General Manager of Enterprise Services, William Stemper (male), President, and Andrew Topping (male), Senior Vice President, Human Resources, I informed Respondents that I had applied for the open Vice President, Enterprise Solutions Sales position, that I am fully qualified for the position, and that I wanted to be considered for the position.

[4]      I received no response to my email.

[5]      On April 26, 2019, I applied for the posted General Manager – Arthur W. Perdue Stadium position at Respondents.  I was qualified for the position.

[6]      On May 2, 2019, I applied for the posted Vice President, Customer Experience Strategy and Operations position at Respondents.  I was qualified for the position.

[7]      On May 3, 2019, I applied for the posted Senior Director, Partnerships, Community Impact position at Respondents.  I was qualified for the position.

[8]      On May 3, 2019, I applied for the posted Vice President, Sales and Sales Operations position at Respondents.  I was qualified for the position.

[9]     On May 14, 2019, Respondents failed to hire me into, or interview me for, the Senior Director, Partnerships, Community Impact position for which I was qualified and had applied. The stated reason was that, "based on the needs for this particular role, [Respondents] decided not to move [me] forward in the process at this time and to proceed with candidates whose qualifications and background are a better fit."

[10]    Respondents failed to hire me into, or interview me for, the Senior Director, Partnerships, Community Impact position because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[11]    On June 25, 2019, Respondents failed to hire me into, or interview me for, the Vice President, Sales and Sales Operations position for which I was qualified and had applied. The stated reason was that, "based on the needs for this particular role, [Respondents] decided not to move [me] forward in the process at this time and to proceed with candidates whose qualifications and background are a better fit."

[12]    Respondents failed to hire me into, or interview me for, the Vice President, Sales and Sales Operations position because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[13]    Respondents failed to hire me into, or interview me for, the Vice President, Enterprise Solutions Sales position for which I was qualified and had applied. I received no response to my application.

[14]    Respondents failed to hire me into, or interview me for, the Vice President, Enterprise Solutions Sales position because of my sex and/or my disability and/or my

seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[15]     Respondents failed to hire me into, or interview me for, the General Manager – Arthur W. Perdue Stadium position for which I was qualified and had applied.  Other than an email confirming receipt of my application, I received no response to my application.

[16]     Respondents failed to hire me into, or interview me for, the General Manager – Arthur W. Perdue Stadium position because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[17]     Respondents failed to hire me into, or interview me for, the Vice President, Customer Experience Strategy and Operations position for which I was qualified and had applied.  Other than an email confirming receipt of my application, I received no response to my application.

[18]     Respondents failed to hire me into, or interview me for, the Vice President, Customer Experience Strategy and Operations position because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[19]     Respondents failed to hire me into, or interview me for, the Vice President, Product Management position for which I was qualified and had applied.  Other than an email confirming receipt of my application, I received no response to my application.

[20]     Respondents failed to hire me into, or interview me for, the Vice President, Product Management position because of my sex and/or my disability and/or my

seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[21]     In or about June 2019, Respondents failed to hire me into, or interview me for, the Vice President, Business Enterprise Solutions position, for which I was qualified.  I had no opportunity to apply for the position because, to my knowledge, the position was not posted. If the position had been posted, I would have applied for the position.  Instead of hiring me, Respondents selected Matthew Fassnacht (male) for the Vice President, Business Enterprise Solutions position, reporting to Katz.

[22]     I was more qualified for the Vice President, Business Enterprise Solutions position than Fassnacht.

[23]     Respondents failed to hire me into, or interview me for, the Vice President, Business Enterprise Solutions position because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[24]     On July 1, 2019, Respondents failed to hire me into, or interview me for, the Vice President, Enterprise Solutions Vertical Markets position, for which I was qualified.  I had no opportunity to apply for the position because, to my knowledge, the position was not posted.  If the position had been posted, I would have applied for the position.  Instead of hiring me, Respondents promoted Ray Hatch (male) to the Vice President, Enterprise Solutions Vertical Markets position, reporting to Purazar Gowadia (male), Vice President, Enterprise Business.

[25]     I was more qualified for the Vice President, Enterprise Solutions Vertical Markets position than Hatch.

[26]     Hatch had reported to me before Respondents terminated my employment.

[27]      Respondents failed to hire me into, or interview me for, the Vice President, Enterprise Solutions Vertical Markets position because of my sex and/or my disability and/or my seeking reasonable accommodations for my disability and/or my complaints of sex and disability discrimination.

[28]      Respondents have assigned my job duties, responsibilities, and direct reports to Fassnacht, Gowadia, and Hatch.

[29]      Respondents have assigned my job duties to and have hired instead of me noncomplaining and/or nondisabled and/or male employees.

[30]      I was more qualified to perform my job duties than the noncomplaining, nondisabled, and/or male employees to whom Respondents have assigned my job duties and hired instead of me.

[31]      Respondents' conduct evidence a bias against female and/or disabled employees and/or employees who seek reasonable accommodations and/or engage in protected activity.

[32]      **I bring this Complaint as a class and pattern and practice Complaint on behalf of myself and any and all current or former employees of Respondents who are female, and have been discriminated against based on sex, in connection with termination, failure to be promoted, compensation, and being subjected to a hostile work environment.**

**B.**  Based on the aforementioned, I allege that Respondents have discriminated against me because of my sex (female) and my disability (including history of and regarded as), and retaliated against me because I sought reasonable accommodations for my disability and because of my sex and disability discrimination complaints, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with

Disabilities Act, as amended, 42 U.S.C. § 12101, et seq. ("ADA"), the Pennsylvania Human

Relations Act, as amended, 43 P.S. § 951, *et seq.* ("PHRA"), and the Philadelphia Fair Practices

Ordinance, Phila. Code § 9-1101, *et seq.* ("PFPO").

    4.    The allegations in Paragraph 3 hereof constitute unlawful discriminatory practices

in violation of:

    **X**    **Pennsylvania Human Relations Act (Act of October 27, 1955, P.L.**

**744, as amended) Section 5 Subsection(s):  (a); (d)**

    ____    Section 5.1 Subsection(s) _____

    ____    Section 5.2 Subsection(s) _____

    ____    Pennsylvania Fair Educational Opportunities Act (Act of July 17, 1961,

P.L. 766, as amended) Section 4 Subsection(s) _____

    5.    Other action based upon the aforesaid allegations has been instituted by the

Complainant in any court or before any other commission within the Commonwealth of

Pennsylvania as follows:

    **X**    **This charge will be referred to the EEOC for the purpose of dual**

**filing.**

    6.    The Complainant seeks that Respondents be required to:

    (a) Make the Complainant whole.

    (b) Eliminate all unlawful discriminatory and retaliatory practice(s) and procedure(s).

    (c) Remedy the discriminatory and retaliatory effect of past practice(s) and

        procedure(s).

    (d) Take further affirmative action necessary and appropriate to remedy the violation

        complained of herein.

(e) Provide such further relief as the Commission deems necessary and appropriate.

## VERIFICATION

I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to the penalties of 18 P.A.C.A. Section 4904, relating to unsworn falsification to authorities.

4/17/2019
(Date Signed)

(Signature)   Kimberly Foley
REDACTED

# EXHIBIT 3

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| To: **Kimberly Epley** | From: **Philadelphia District Office** |
|---|---|
| REDACTED ▬▬▬▬▬▬▬▬▬ | **801 Market Street** |
| ▬▬▬▬▬▬▬ | **Suite 1000** |
| | **Philadelphia, PA 19107** |

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| | **Kurt Jung** | |
| **17F-2020-60574** | **State, Local & Tribal Program Manager** | **(267) 589-9749** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge.  It has been issued at your request.  Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

[X]  More than 180 days have passed since the filing of this charge.

[ ]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge.  In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case.  Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.**  Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case.  However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):**  You already have the right to sue under the EPA (filing an EEOC charge is not required.)  EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

*Jamie R Williamson*                                                               **10/15/2020**

Enclosures(s)                          **Jamie R. Williamson**                          *(Date Mailed)*
                                       **District Director**

cc:      **COMCAST CORPORATION AND COMCAST CABLE COMMUNICATIONS MGMT, LLC**

**Katherine C. Oeltjen, Esq.**                          **Paul C. Evans, Esq.**
**Console Mattiacci Law**                               **Baker & McKenzie, LLP**
**1525 Locust Street, 9th Floor**                       **452 Fifth Avenue**
**Philadelphia, PA 19102**                              **New York, NY 10018**
oeltjen@consolelaw.com                                  paul.evans@bakermckenzie.com